UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHARLES STEWART, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BANK OF AMERICA , N.A., et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-05322-JST<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF Nos. 5, 17 |

Defendants Bank of America, N.A., U.S. Bank Trust Company, N.A., U.S. Bancorp,[1] and Caliber Homes Loans, Inc. (collectively, "Defendants") removed this action from the Sonoma County Superior Court on diversity jurisdiction grounds, and filed a Motion to Dismiss. ECF No. 1 ¶ 11; ECF No. 5. Plaintiffs Christopher Charles Stewart and Kara Michelle Stewart (collectively, "Plaintiffs") move to remand the action, arguing the federal "amount in controversy" requirement has not been satisfied. ECF No. 17. Plaintiffs also oppose Defendants' Motion to Dismiss. ECF No. 22. For the reasons stated below, the Court will deny both Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss.

I.   **BACKGROUND**

　　A.   **Facts and Procedural History**

On August 16, 2016, Plaintiffs filed a complaint ("the Complaint") against Defendants in the Superior Court of California, County of Sonoma. See ECF No. 17-1. The gravamen of the Complaint alleges Defendants reneged on their obligations pursuant to a loan modification agreement. Id. at 8. Plaintiffs claim they applied for a loan modification with Bank of America,

---

[1] Plaintiffs voluntarily dismissed Defendant U.S. Bancorp from this action. See ECF No. 23.

Bank of America approved them for a trial period, and Plaintiffs complied with the terms of the trial period by making three payments in the amount of $3,343.84 over the course of three months. Id. at 10.  Bank of America then approved Plaintiffs' loan modification application and provided Plaintiffs with a loan modification agreement.  Id. at 11.  Bank of America ultimately denied Plaintiffs' loan modification, however, claiming that Plaintiffs failed to return signed modification documents by the specified due date – a fact Plaintiffs dispute.  Id.  Plaintiffs' Complaint raises three causes of action: (1) breach of contract; (2) promissory estoppel; and (3) violation of Business and Professions Code section 17200.  Id. at 7.  The Complaint does not allege an amount in controversy.

On September 16, 2016, Defendants removed the action to this Court, asserting diversity jurisdiction.  ECF No. 1 ¶ 11.  Defendants also filed a Motion to Dismiss, arguing (1) Plaintiffs fail to state a claim upon which relief can be granted and (2) judicial estoppel bars Plaintiffs' claims.  See ECF No. 5.  Plaintiffs contend Defendants have not proven the amount in controversy exceeds $75,000 by a preponderance of the evidence, and claim only the three trial period payments, totaling $10,031.52, are in controversy.  ECF No. 17 at 7-8.  Since the Motion to Remand presents a "threshold jurisdictional question," the Court will address it before turning to Defendants' Motion to Dismiss.  Lowry v. Barnhart, 329 F.3d 1019, 1022 (9th Cir. 2003) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)).

### B. Requests for Judicial Notice

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The Court may properly take judicial notice of materials attached to the complaint and of matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  A court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  However, the Court takes judicial notice only of the existence of the document, not of the veracity of allegations or legal conclusions asserted in it.  See Lee, 250 F.3d at 689-90.

The parties have filed several requests for judicial notice: two are filed by the Defendants, ECF Nos. 5-1 and 26, and one is filed by Plaintiffs, ECF No. 17-1.

In support of their Opposition to Plaintiffs' Motion to Remand, Defendants request judicial notice of the adjustable rate note, the December 2014 loan modification agreement, and the Truth-in-Lending disclosure statement for the Plaintiffs' mortgage loan. See ECF No. 26. Because a court may take judicial notice of documents whose authenticity is not contested and upon which the plaintiff's complaint relies, see Lee, 250 F.3d at 688-89, the Court grants this request for judicial notice. In support of their Motion to Dismiss, Defendants request judicial notice of the assignment of deed of trust, the docket for Plaintiffs' Chapter 13 bankruptcy petition, the second amended Chapter 13 plan ("the Plan"), the order confirming the plan ("the Order"), the debtor's opposition to one of the Defendants motions for relief from automatic stay, the motion permitting parties to enter into a loan modification agreement, the debtor's opposition to the motion to enter into a loan modification agreement, and the Bankruptcy Court for the Northern District's guidelines regarding residential loan modifications ("the Guidelines"). See ECF No. 5-1. Because the accuracy of these documents is readily determinable through sources whose accuracy cannot reasonably be questioned, the Court grants this request for judicial notice as well.

In support of their Motion to Remand, Plaintiffs request judicial notice of the Complaint, Defendants' Notice of Removal to this Court, and an order from another court in this District, denying a motion to remand to state court. See ECF No. 17-1. The Court finds the first two documents appropriate for judicial notice as documents in the public record not reasonably subject to dispute because their accuracy can readily be determined from sources whose accuracy cannot reasonably be questioned. Moreover, because a court "may take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue," Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007), the Court will also take judicial notice of the court order.

## II.     MOTION TO REMAND

### A.     Legal Standard

"[A]ny civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by a defendant . . . to [a] federal district court."

3

28 U.S.C. § 1441(a). "A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441). To invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a), the amount in controversy must "exceed[] the sum or value of $75,000." Urbino v. Orkin Servs. of California, Inc., 726 F.3d 1118, 1121 (9th Cir. 2013). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992). The court "resolves all ambiguity in favor of remand." Hunter, 582 F.3d at 1042. "'[T]he defendant always has the burden of establishing that removal is proper.'" Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting Gaus, 980 F.2d at 566).

The parties agree that complete diversity exists, as Plaintiffs are domiciled in California and Bank of America, Caliber, and U.S. Bank Trust Co. are located in North Carolina, Delaware, and Ohio, respectively. ECF No. 1 at 4. The sole dispute is whether the amount in controversy exceeds $75,000. The Complaint does not allege an amount in controversy, but seeks economic damages according to proof, general damages according to proof, attorneys' fees and costs of suit, and "[f]or such other relief and further relief as the court may deem just and proper." ECF No. 17-1 at 14.

### 1. Amount in Controversy

"The jurisdictional minimum may be satisfied by claims for special and general damages, punitive damages, and attorneys' fees." Simmons v. PCR Technology, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. July 2, 2002). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled . . . the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007) (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy" requirement is met. Sanchez, 103 F.3d at 404; see also Gaus, 980 F.2d at 566-67 ("If it is unclear what amount of damages the plaintiff has sought, . . . then the

defendant bears the burden of actually providing the facts to support jurisdiction, including the jurisdictional amount."). Importantly, the Ninth Circuit notes:

> The amount-in-controversy inquiry in the removal context is not confined to the face of the complaint . . . . Nor does it present an insurmountable obstacle to quantify the amount at stake when intangible harm is alleged; the parties need not predict the trier of fact's eventual award with one hundred percent accuracy . . . . Instead, although we have not addressed the type of evidence defendants may rely upon to satisfy the preponderance of the evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any summary-judgment type evidence relevant to the amount in controversy at the time of removal.

Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations, citations, and alterations omitted). A speculative argument regarding the potential value of the amount in controversy is insufficient. Singer v. State Farm Mutual Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1987); Gaus, 980 F.2d at 567.

### B. Discussion

Defendants advance two[2] arguments for why the Complaint meets the amount in controversy requirement. First, Defendants argue "the amount in controversy [is] established by the value of the Property[,]" which Defendants argue is $650,000. ECF No. 1 ¶ 22. Second, Defendants argue the amount in controversy is satisfied by "the difference between the total cost of the subject mortgage loan as originated, and the loan as Plaintiffs argue it should have been modified in 2014." Id. ¶ 23.

#### 1. Value of the Property

Defendants argue the amount in controversy "can be established by the value of the property and/or the amount of the mortgage debt at issue." ECF No. 27 at 5 (citing to Reyes v.

---

[2] While Defendants do not claim it independently establishes the amount in controversy, they also argue that Plaintiffs are disingenuous in claiming that the damages are limited to the three payments made during the trial period, totaling $10,031.52. Defendants note Plaintiffs' state law claim was filed as an "unlimited civil case," which requires a claim for damages in excess of $25,000, and therefore $10,031.52 cannot be the only amount at issue. ECF No. 27 at 5 n.2. While Defendants' point is well-taken, Defendants, as the removing parties, must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. That Plaintiffs effectively told the state court that the value of the case exceeded $25,000 does not help establish that it exceeded $75,000.

Wells Fargo Bank, No. C-10-01667 JCS, 2010 WL 2629785, \*5 (N.D. Cal. Jun. 29, 2010)).

Defendants' reliance on Reyes is misplaced. As that court explains,

> [T]he value of the property is the object of the litigation for the purposes of determining whether the amount-in-controversy requirement has been met *so long as the plaintiff is seeking injunctive relief to prevent or undo the lender's sale of the property*.

Id. (emphasis added). That is not the case here. Plaintiffs are not seeking to prevent a foreclosure, and Plaintiffs are at pains in their briefing to point out that "there is no request by Plaintiffs for injunctive or declaratory relief." ECF No. 17 at 8. Even in cases where a plaintiff is temporarily enjoining foreclosure pending a determination of her loan modification application, courts have "roundly rejected the argument that the amount in controversy is the entire amount of the loan." Jauregui v. Nationstar Mortg. LLC, No. EDCV 15-00382-VAP (KKx), 2015 WL 2154148, at \*4 (C.D. Cal. May 7, 2015) (internal quotations and citation omitted); see also Lopez v. JPMorgan Chase Bank, N.A., No. SACV 15-02030 JVS (JCGx), 2016 WL 320105, \*3 (C.D. Cal. Jan. 25, 2016) ("Federal district courts recognize a narrow exception to the general rule governing the amount in controversy requirement for foreclosure actions: when there is no actual foreclosure pending, and the plaintiff seeks only to enjoin possible foreclosure proceedings, the value of the property or the loan is not the proper measure of the amount in controversy."); Quiroga v. Bank of America, N.A., No. EDVC 15-1163-MWF (KKx), 2015 WL 474978, \*3 (C.D. Cal. Aug. 10, 2015) ("Plaintiff seeks to obtain a modification and recover damages resulting from [Defendant's] alleged improper actions regarding his attempts to obtain a modification. The value of the house, or the loan, is not the proper measure of the amount in controversy.").

The Court concludes that the value of the underlying loan does not establish the amount in controversy.

### 2.     The Difference in Value Between the Current Loan and Modified Loan

Many courts have concluded "the appropriate test for determining the amount-in-controversy in [cases like this] is 'the pecuniary result to either party which the judgment would directly produce.'. . . Here, that will be the difference in value between the current loan and requested modified loan, plus any additional damages Plaintiff seeks." Cephas-Boyd v. Shellpoint

Partners, LLC, No. EDCV 16-386-JGB (KKx), 2016 WL 1600828, at *4 (C.D. Cal. Apr. 21, 2016); see also Johnson v. Wells Fargo, No. CV 12-00144 GAF (SPx), 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) ("[I]f a plaintiff asserts that he is entitled to a wrongfully denied loan modification, the amount put into controversy is the difference between the value of the existing loan and the proposed modified loan."). The Court agrees the proper inquiry for purposes of the amount in controversy is the difference in value between the current and modified loans, and finds Defendants have shown by a preponderance of the evidence that that amount exceeds $75,000.

Bank of America clearly states the value of the modified loan agreement is $1,218,510.26. ECF No. 1-4 at 7. "Based on the schedule set forth in the Loan Modification Agreement, Plaintiffs would have made total payments of principal and interest (not including any amounts charged for taxes or property insurance) of $1,218,510.26." ECF No. 27-1 ¶ 7 ("Dansby Declaration"); see also ECF No. 26-2 at 7. Plaintiffs argue "any valuation based on [the] loan modification terms is purely speculative" because the loan modification agreement contains language indicating the total monthly payments "[m]ay adjust periodically." ECF No. 29 at 4. While the "Estimated Monthly Escrow Payment Amount" and, consequently, the total monthly payment may adjust periodically, it is undisputed the "Monthly Principal and Interest Payment Amount" is not variable. Since the value of the original loan does not include monthly escrow payments, see ECF No. 1-3 at 2, the adjustability of the modified loan based on monthly escrow payments does not undermine Defendants' calculation of the difference between the original and modified loans.

Next, Defendants "undert[ake] a calculation of the value of the potential contract claim based on Plaintiffs' argument that [Plaintiffs] were deprived of the benefit of a . . . modification of their mortgage loan," and calculate the potential contract damages to be $203,635.93. ECF No. 27 at 6. Defendants reach this amount by "[t]aking the total cost of the loan at origination . . . [d]educting . . . for amounts the borrowers paid on the loan through March 1, 2012, and . . . [s]ubtracting the cost of the loan as Plaintiffs claim it should have been permanently modified in 2014." Id. The Court has reviewed the pertinent briefings and documents and concludes that the record supports Defendants' calculation.

7

Consequently, the Court finds Defendants have established the amount in controversy requirement by a preponderance of evidence, and deny the Motion to Remand.

The Court now turns to Defendants' Motion to Dismiss.

### III.  MOTION TO DISMISS

#### A.  Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A party may move to dismiss based on the failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, a pleading must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir.1996).

#### B.  Discussion

Defendants advance two arguments in support of their Motion to Dismiss: (1) Plaintiffs' failure to seek the Bankruptcy Court's approval of the loan modification agreement precludes Plaintiffs from asserting their claims here and (2) Plaintiffs are judicially estopped from asserting their claims. Both arguments are unpersuasive.

##### 1.  Plaintiffs Were Not Required to Seek the Bankruptcy Court's Approval of the Loan Modification Agreement Prior to Asserting Their Claims

Defendants contend Plaintiffs' failure to seek the Bankruptcy Court's approval of the loan modification agreement precludes Plaintiffs from asserting claims based on the purported agreement. ECF No. 5 at 15-16. Specifically, Defendants argue Plaintiffs did not adhere to

8

United States District Court
Northern District of California

section 1329 of the Bankruptcy Code, the Guidelines promulgated by the Bankruptcy Court for the Northern District, or the Order confirming the Plan.  Id.; ECF No. 28 at 8.

Defendants do not dispute that Plaintiffs have adequately pleaded the elements of their stated causes of action.  Instead, the main premise of Defendants' argument is Plaintiffs were required to seek the Bankruptcy Court's approval of their loan modification agreement in order for the agreement to be enforceable.

The case authority does not support Defendants' position.  In fact, in cases considering loan modifications specifically, bankruptcy courts have noted "there does not appear to be any Code provision or Bankruptcy Rule that requires judicial approval of the terms of a loan modification."  In re Moore, No. 12-40456-EJC, 2015 WL 5553534, at *1 (Bankr. S.D. Ga. Sept. 18, 2015); see also In re Wofford, 449 B.R. 362, 364 (Bankr. W.D. Wis. May 23, 2011) ("[T]he court noted that a loan modification *could* be reviewed (and approved) by a court in the context of plan confirmation, or as a resolution of an actual dispute (such as a motion for relief from the stay).  At the same time, there does not appear to be any applicable law or rule that requires judicial approval of the terms of the loan modification itself.") (emphasis in original).   The In re Moore court did "recognize[] a few situations in which a loan modification agreement could be properly reviewed and approved by a [bankruptcy] court[,]" such as "court approval of a loan modification . . . in the context of a plan confirmation, or as a resolution of an actual dispute, such as a motion for relief from the stay[,]" or if a bankruptcy court "considered loan modifications to be reaffirmation agreements requiring court approval."  Id. (internal citations omitted).  Here, the Plan has already been confirmed, Defendants do not argue there is a motion for relief from stay, and, even if the loan modification at issue is considered a reaffirmation agreement, "[a]s provided in the disclosures which debtors are statutorily required to receive from the creditor in connection with a reaffirmation agreement, court approval is not required if the obligation is secured by real property," as is the case here.  Wofford, 449 B.R. at 364 (citing 11 U.S.C. § 524(k)(3)(J)(i)(7)) .  Thus, the Court finds Plaintiffs were not required to seek the Bankruptcy Court's approval of the loan modification agreement prior to asserting their claims here.

Defendants cite American Prairie Constr. Co. v. Hoich, 594 F.3d 1015, 1024-25 (8th Cir.

2010), in support of their position. ECF No. 5 at 12. American Prairie is not analogous. It deals with settlements or compromises between debtor and creditor – not loan compromises. In contrast to the lack of case authority requiring judicial approval of a loan compromise, *supra*, the American Prairie court noted that "a recognized principle of bankruptcy law [is] that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective." Id. at 1024. Moreover, the case is out-of-circuit and not persuasive authority for the question present here.

Even if Plaintiffs were required to seek the Bankruptcy Court's approval, that approval did not need to occur prior to Defendants approving the loan modification agreement. Section 1329(a) of the Bankruptcy Code provides:

> [a]t *any time after confirmation of the plan but before the completion of payments* under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to . . . increase or reduce the amount of payments on claims of a particular class provided for by the plan.

11 U.S.C. §1329(a)-(a)(1) (emphasis added); see also In re Escarcega, 557 B.R. 755, 771 (Bankr. N.D. Cal. Sept. 26, 2016) ("[Section 1329(a)] permits a reevaluation of the case to deal with changing facts."). Section 1329(b) states "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under [section 1329(a)] of this section." 11 U.S.C. §1329(b). Importantly, none of these sections can be interpreted to mean that a debtor seeking a home loan modification after plan confirmation must seek the bankruptcy court's approval prior to reaching an agreement with her mortgagor. Sections 1322(a)-(b) list requirements for bankruptcy plans, section 1323(c) lists requirements for modifications prior to confirmation, and section 1325(a) obligates a bankruptcy court to confirm a plan when certain findings are made. See 11 U.S.C. §1322(a)-(b); 11 U.S.C. §1323(c); 11 U.S.C. §1325(a).

Here, it is undisputed the Plan has been confirmed by the Bankruptcy Court and Plaintiffs have not completed making payments. See ECF No. 5-2 at 10, 15; see also ECF No. 5 at 9. Thus, the Court finds "[Plaintiffs] may file a motion to modify [a plan] any time it is warranted." In re Escarcega, 557 B.R. at 772. This makes sense because plan modifications require the trustee's

and creditors' input; to expect trustees and creditors to approve of a plan modification that is contingent on a loan modification that has not yet been approved would waste judicial resources, impose potentially unnecessary hardships on trustees and creditors, and prevent trustees from accurately managing estates. See Fed. R. Bankr. P. 3015 ("A request to modify a plan . . . shall identify the proponent and shall be filed together with the proposed modification. The clerk . . . shall give the debtor, the trustee, and all creditors not less than 21 days' notice . . . for filing objections and, if an objection is filed, the hearing [date] to consider the proposed modification.").

Further, the Defendants do not contend—and the Court has no reason to believe—a motion to modify the Plan on the basis of the loan modification agreement would be denied by the Bankruptcy Court in the instant case. See In re Hall, 442 B.R. 754, 759 (Bankr. D. Idaho Aug. 31, 2010) ("As long as a request for modification satisfies the requirements of § 1329, the modification should be approved.") (citing In re Powers, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996)). Thus, Plaintiffs can still move to modify the Plan in the Bankruptcy Court and, while "[Plaintiffs] cannot [unilaterally] propose a plan which modifies the bank's claim[,]" that "does not mean that the parties cannot agree to new terms." In re Wofford, 449 B.R at 364. Indeed,

> [a] secured creditor can agree to a modification that incorporates the parties loan modification agreement, much the same way the parties could incorporate the loan modification agreement into a debtor's plan as part of [the initial plan] confirmation. In that context, the [bankruptcy court] may consider the parties' loan modification *as part of* the plan modification, which, of course, is still subject to the other restrictions in chapter 13 of the Bankruptcy Code.

In re Smith, 409 B.R. 1, 14 (Bankr. D. N.H. July 23, 2009) (emphasis added).

Defendants' reliance on the Order and the Guidelines are also unavailing. The Order requires that no lien on real property be modified except pursuant to either an adversary proceeding or a contested matter, but the order does not require either process to occur before the debtor and bank enter into a loan modification agreement. See ECF No. 5-2 at 24-25. The Guidelines similarly do not support Defendants' argument because (1) they are guidelines and not mandatory and (2) they support the position that a motion to modify a plan ought to be filed after a loan modification agreement has been approved, see ECF No. 5-2 at 65 ("No plan . . . that proposes the loan modification terms for treatment of the first lien mortgage creditor's claim will

11

1  be confirmed until the modification has been approved by the first mortgage lender with proof of
2  such approval provided to the Chapter 13 trustee.").

3  Plaintiffs' failure to seek the Bankruptcy Court's approval of the loan modification agreement did not render the agreement meaningless and, therefore, viewing the Complaint in the light most favorable to Plaintiffs, the Court finds the Plaintiffs have stated claims upon which relief can be granted.

### 2. Plaintiffs are not Judicially Estopped from Asserting Their Claims

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citations omitted). Courts also invoke judicial estoppel because of "general consideration[s] of the orderly administration of justice and regard for dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts." Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)). The Ninth Circuit, however, "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." Hamilton, 270 F.2d at 783.

The Ninth Circuit has applied judicial estoppel to prevent plaintiffs from asserting claims they failed to disclose during earlier bankruptcy proceedings. See, e.g., Hamilton, 270 F.3d at 784 ("This court has held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were permanently discharged was estopped from pursuing such claim in a subsequent proceeding.") (citation and emphasis omitted); Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992) (holding that the failure to give notice of a potential cause of action in bankruptcy schedules and disclosure statements estops the debtor from prosecuting that cause of action). "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Hamilton, 270 F.3d at 783 (citing Hay, 978 F.2d at 557)). "[T]he bankruptcy code requires scheduling all assets, including 'potential' claims[,]" and the "[f]ailure to list an asset or interest on the bankruptcy schedules causes the debtor to be

12

judicially estopped from pursuing a claim to recover that interest after discharge." Holland & Knight, LLP v. Deatley, 357 Fed. App'x 83, 84 (9th Cir. 2009) (citing Hamilton, 270 F.3d at 783, 785). "The debtor's duty to disclose potential claims as assets . . . continues for the duration of the bankruptcy proceeding." Hamilton, 270 F.3d at 785 (citations omitted).

Defendants contend Plaintiffs are judicially estopped from asserting their claims because Plaintiffs failed to list them as assets in the bankruptcy proceeding. ECF No. 5 at 17. Plaintiffs' failure to disclose the current causes of action, however, is not in and of itself sufficient to trigger judicial estoppel: Defendants must show "[t]he bankruptcy court . . . 'accept[ed]' the debtor's assertions by relying on the debtor's nondisclosure of potential claims." Hamilton, 270 F.3d at 784. While there are "many . . . ways" to establish a bankruptcy court relied on a debtor's nondisclosure – such as the bankruptcy court lifting a stay based in part on the debtor's nondisclosure in its bankruptcy schedules or the bankruptcy court approving the debtor's plan of reorganization – id., no such indications of reliance are present here. Thus, while Plaintiffs do have a continuing obligation to disclose their causes of action as potential assets to the Bankruptcy Court, and it is not clear they have done so, the Bankruptcy Court does not appear to have acted in reliance on that omission. There has been no confirmation of a modified plan, issuance of a new scheduling order, or discharge of Plaintiffs' debts on reliance of the nonexistence of Plaintiffs' contract claims. Consequently, the Court finds Plaintiffs are not judicially estopped from asserting their claims.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion to Remand this action and also denies Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Dated: December 28, 2016

                                                JON S. TIGAR
                                    United States District Judge